WILLIAM McKENZIE, Appellant, v. HARVEY DICKINSON, Respondent.

No. 1462; June 29, 1868.

Partnership—Rights of Partners in Property.—While a partnership still is in existence and its affairs unsettled, the undivided assets of the firm cannot be said in law to be the individual private property of any one of the partners.

Pleading.—A Party must Recover, if at All, According to the Allegations of his pleadings, whatever the evidence introduced may be.

APPEAL from Twelfth Judicial District, San Francisco County.

Collins & Clement for appellant; G. F. & W. H. Sharp for respondent.

See McKenzie v. Dickinson, 43 Cal. 119.

SAWYER, C. J.—The complaint avers that prior to the 18th of January, 1861, plaintiff and defendant were partners in business under the firm name of McKenzie & Co.; that on said day the partnership was dissolved, and subsequently thereto, and prior to November, 1861, all the interest of the defendant in the property and assets of the firm was sold by the sheriff under an execution issued upon a judgment

against said defendant; that the said defendant, at some time unknown to plaintiff, and without his knowledge or consent, executed a promissory note, in the name of said firm, in favor of one Burns, for the sum of sixteen hundred dollars and interest at two per cent per month; that plaintiff was in no way informed of the execution of said note, and that it was in no way taken into account in the settlement and accounting had with reference to said partnership affairs; that, afterward, in March, 1864, said Burns recovered a judgment upon said note against said plaintiff, which said plaintiff was obliged to pay, and did pay, to the amount of three thousand and ninety dollars; and that no part of the consideration of said note ever came to the use of said plaintiff, or said firm of McKenzie & Co., but that the same was wholly received by said defendant, and applied to his own private use and benefit. Judgment for the amount is prayed.

The defendant denies that the partnership was dissolved at the time alleged in the complaint, or any other time, or that there had been a final settlement of accounts; or that plaintiff had ever paid said judgment, or that he had paid it out of his individual funds, or that the consideration had in whole, or in part, been received by said defendant for his own benefit, or applied to his own use; but avers that the note was executed on behalf of the firm, and that the cash received therefor was applied to the use of the firm; that the judgment thereon is against both parties and still remains unsatisfied.

The defendant then, by way of counterclaim, or cross-complaint, and for the purpose of obtaining affirmative relief, avers that on the 1st of January, 1857, said plaintiff and defendant entered into partnership as equal partners under the name of McKenzie & Co., without any limitation as to the time of its duration; that there has been no dissolution, and the partnership matters are still unadjusted and unsettled, and that on an accounting there will be over three thousand dollars due defendant; that it was the custom of plaintiff and defendant to make a yearly statement of their affairs; that on the 19th of January, 1861, an inventory of the affairs of McKenzie & Co. was taken, and there "was upward of seven thousand dollars of available cash—assets due said firm, besides the stock in trade, together with a large number of

sewing machines, steam engine, and building and lot," good-will, etc.; that out of these assets McKenzie was to retain four thousand five hundred and seventy-seven dollars, and of the balance one-half belonged to each; that plaintiff had collected and received of the firm assets some fifteen thousand dollars and upward, and retained the same, refusing to account; that at the time of said partial accounting, on the 19th of January, 1861, it was agreed that the partnership should continue, and that defendant should go to New York and purchase goods on account of the firm; that, in pursuance of the understanding, the defendant did go to New York by the steamer of January 21, 1861; that immediately on his arrival at New York defendant commenced purchasing and shipping, and continued till the 1st of April to purchase and ship goods through the house of Wm. T. Coleman & Co., to be delivered to McKenzie & Co. at San Francisco; that the amount so purchased and shipped was twenty-five thousand dollars; that he then proceeded to San Francisco, and on his arrival on the 6th of May, the plaintiff for the first time informed defendant that he considered the partnership dissolved, and that during defendant's absence all the interest of said defendant in the assets of the firm of McKenzie & Co. had been sold out by the sheriff on an execution against said defendant individually, in favor of one Lane, and all debts due defendant, or credits belonging to him, had been garnished in plaintiff's hands; that plaintiff refused to give any account of the partnership matters; that plaintiff has carried on the business ever since under the same firm name, with the capital stock, machinery and instruments, and in the firm building, and defendant claims that it shall be held to be on joint account. Defendant further avers that on the 22d of January, 1861, while they were partners, as aforesaid, the plaintiff, "as trustee for the defendant," purchased of one Lane a certain judgment against the defendant; that said plaintiff purchased the judgment for the sum of two hundred and fifty dollars, "and that the same was for the use and benefit of plaintiff"; that, at the request of plaintiff, the assignment was made in the name of one Gordon; that Gordon did not give any consideration, but that the assignment to said Gordon was made with the fraudulent intent on the part of plaintiff to have an execution issued and the

interest of said defendant in the partnership assets sold; that plaintiff afterward caused an execution to be issued, and, by virtue thereof, sold the defendant's interest in the partnership assets, and himself purchased the same in the name of Gordon; that Gordon paid nothing whatever for said purchase, "but the same was really, in fact, made for the sole benefit of McKenzie & Co.," and for the purpose of defrauding the defendant; that, at the time of procuring the assignment to Gordon, the plaintiff had in his own hands belonging to the defendant, a large amount of money, greatly exceeding the amount paid to said Lane for said assignment, and that the same was purchased, and paid for, with the private and individual funds of the defendant; and that the same ought to have been taken in his name; that the said proceedings were had for the purpose of defrauding the defendant of his share of the partnership assets; that Gordon never claimed to own any portion of the property purchased under the execution, but that plaintiff has always received and claimed, and now retains and claims, the whole property, so sold, as his own, and that he only used Gordon as an instrument for accomplishing his scheme of defrauding the defendant. Defendant claims that there is a large amount of property now in the hands of plaintiff which belongs to the firm, and prays an account of the partnership affairs, and for a final settlement and dissolution of the firm.

The foregoing is the substance of the material allegations of the pleadings on both sides, particularly of the counterclaim or cross-complaint, upon which affirmative relief is prayed. It will be seen that the allegations of the answer all relate strictly to property which is alleged to be partnership property, and the only relief sought is an account of the partnership affairs. There is no allegation that any individual property, real or personal, of the defendant was sold under the judgment, purchased by the plaintiff, and no lands described at all. The only allusion, direct or remote, to lands of any sort, is the very general one in the statement, that among the assets of the firm, of which an inventory was taken on the 19th of January, was a "building and lot," without describing the lot. This lot, wherever it was, is thus averred to be a part of the assets of the firm, and not individual property. There seem to be some inconsistencies in the allega-

tions of the cross-complaint. Whatever the pleader's own theory of the case may have been, he has not been very happy in expressing it. Thus it is alleged that "the plaintiff, as trustee for this defendant," purchased the Lane judgment, but in the same paragraph he avers that "said plaintiff purchased the same for the consideration of two hundred and fifty dollars, and that the same was for the use and benefit of the plaintiff." And further along it is alleged that plaintiff caused defendant's interest in the partnership assets to be sold under execution issued on said judgment, and that he purchased the same in the name of Gordon; that Gordon paid no consideration, but the purchase "was really in fact made," not for plaintiff, or defendant, but "for the sole use and benefit of McKenzie & Co." It is not stated whose funds were used in the purchase at sheriff's sale, or whether any other than a credit on the judgment, but, in the very next clause, it is alleged that, at the time plaintiff procured the assignment of the judgment to Gordon, he had in his hands a large amount of money belonging to defendant, exceeding the amount paid to Lane for the judgment, "and that the same was purchased and paid for with the private and individual funds of this defendant." Thus sometimes the plaintiff is alleged to be the beneficiary, sometimes McKenzie & Co.—the firm—and sometimes the defendant. And sometimes the funds in the hands of McKenzie & Co. seem to be treated as partnership funds, and sometimes they seem to be treated as though there had been a final settlement, and the assets divided, and McKenzie was in possession of the individual funds of the defendant rather than of the firm. The averment relating to the individual funds of the defendant in plaintiff's hands must be read in connection with the other allegations of the pleading, and, when so read, it must be regarded as referring only to the partnership funds in the hands of plaintiff, in which defendant has an interest as a member of the firm. In other words, if the partnership affairs should be settled at that point of time, the defendant's share of the funds would exceed the amount paid for the Lane judgment, or, at most, that the firm is indebted to defendant for much more than the amount paid for the judgment. We do not understand that more is claimed for it. But, while the partnership is still in existence, and its

affairs unsettled, the undivided assets of the firm cannot be said, in law, to be the individual, private funds of any one of the partners. And the partnership, in this instance, at the date of the purchase of the Lane judgment, must be regarded as dissolved, and its affairs finally settled, as claimed by plaintiff, or still existing and unsettled, as claimed by defendant. The latter is the theory of defendant's case, and on this theory there do not appear to have been any individual funds of defendant in the hands of plaintiff. The partnership being annulled, the funds were partnership funds, whether one or the other member of the firm had more than his share of advancements. The pleading relates solely to property alleged to be partnership property, and the whole of defendant's case is to procure a settlement of the partnership transaction, and to obtain his share of the partnership assets, of which the plaintiff, during his absence on the business of the firm, sought to deprive him by purchasing, in the name of another, with the funds of the firm, a judgment against him individually, and selling out his interest in the partnership assets. No complaint is made that plaintiff went outside of the partnership, and also, fraudulently, sold any of the individual, private property of defendant, and no relief for such a wrong is sought in this action.

We have been thus particular in stating the pleadings, for the purpose of comparing the cause of action set out with the facts found, and the relief granted, and ascertaining whether the relief afforded is within the scope of the case made by the pleadings.

The court finds that the partnership was not dissolved on the 19th of January, 1861, nor at any time prior to the commencement of this suit; that on said nineteenth day of January the said firm had solvent and collectible debts due the firm, amounting to twelve thousand dollars; that on the same day said firm had in their store on Clay street personal property amounting to three thousand three hundred and thirty dollars; that on the same day defendant, Dickinson, was seised in fee simple, in his own right, of a certain piece of land on Virginia street in the city of San Francisco, forty feet front by sixty feet deep, described by metes and bounds; that on said day the said defendant, Dickinson, was also seised in his own right of a "certain water lot, and house erected

thereon, situate on Clay street in said city," twenty-five feet by fifty-nine feet nine inches, described by metes and bounds, "and which,. at the times hereinafter mentioned, was occupied by the said firm of McKenzie & Co., as a store"; that, on the 21st of January, 1861, said defendant went to New York, upon business of the firm of McKenzie & Co.; that, on the 11th of March, 1861, the plaintiff, during the absence of defendant from the state, while the partnership continued, sought out Lane, who held a judgment for two thousand three hundred and forty-nine dollars and twenty-eight cents, with interest at the rate of five per cent per month, recovered against defendant, his copartner, on the 3d of June, 1857, and purchased the said judgment for five hundred dollars, and that the said sum of five hundred dollars paid was a part and parcel of the partnership funds of said firm of McKenzie & Co.; that, at plaintiff's request, the judgment was assigned to one Joseph Gordon; that Gordon paid no part of the purchase money, but the "value thereof proceeded from and was paid by the plaintiff, as aforesaid" (that is to say, as stated in the preceding finding, out of the partnership funds), "and the said assignment was taken in the name of said Gordon for the purpose of defrauding said Harvey Dickinson"; that "at the time of the purchase" of said judgment "said plaintiff had in his possession, belonging to the defendant, ample and sufficient funds and property to discharge the same"; that after the assignment plaintiff procured an execution to be issued on the judgment, and had the interest of his said partner in the firm of McKenzie & Co. sold thereunder, and also the said real estate of the defendant situate on Clay and Virginia streets; that Gordon became the purchaser, but that all the purchase money was paid by plaintiff, and no part by Gordon; that the purchases were only colorably made in the name of Gordon, in order to defraud defendant; that Gordon had no interest whatever in the property; that the sheriff delivered possession of the property purchased to Gordon, who transferred and delivered it to plaintiff; that the real estate was conveyed by the sheriff to Gordon, who entered into possession and held for plaintiff; that plaintiff collected and received to his own use the rents and profits of the said real estate, and received them in gold coin, and that the monthly value of the same is one hundred

and twenty dollars per month; 'that the note in suit was given on account of the firm, and that plaintiff had satisfied the judgment recovered by Burns.

A reference having been made, to take an account of the partnership matters, the commissioner reported, and the court found, that, on a final settlement, plaintiff was indebted to the defendant in the sum of twelve thousand seven hundred and thirteen dollars and ten cents in gold coin. And, as a conclusion of law, the court finds that defendant, Dickinson, is the owner of the Clay and Virginia streets property as against plaintiff and all persons claiming under him, as trustee or otherwise, and that plaintiff ought to convey the same to the defendant; that defendant is entitled to be reinstated in the exclusive possession of the said premises, and that Gordon, as trustee of plaintiff, ought to join in the conveyance, but as he is not a party, he cannot be compelled to do so in this action. Judgment was accordingly rendered in favor of defendant, against plaintiff, for the sum of twelve thousand seven hundred and thirteen dollars and ten cents and costs, and that the copartnership be dissolved; that the plaintiff McKenzie, within ten days after the entry of judgment, execute to defendant, Dickinson, a proper conveyance of the Clay street and Virginia street property (giving a description thereof by metes and bounds), and in default thereof, that the court commissioner be authorized and required to execute a conveyance to the defendant, in the name and on behalf of the plaintiff; and that defendant be restored to, and placed in, the actual possession of said premises.

The appeal is both from the judgment and the order denying a new trial.

After looking into the evidence contained in the statement on motion for new trial, we are not prepared to say that the evidence does not justify the findings of the court upon the main issues in the case. The testimony is conflicting; but taking all the testimony, as now presented, it certainly does look as though there was no intention of dissolving the partnership before Dickinson left for New York; that Dickinson went to New York on the business of the firm; and that, as soon as he had gone, the plaintiff took advantage of the knowledge, acquired in his partnership relations, to seek out

the owner and secretly and fraudulently buy up in the name of another, with the partnership funds, a large outstanding judgment against his partner, and sell out, not only his interest in the partnership, but also a considerable amount of valuable real estate held by him, with a view of fraudulently appropriating the property to his own use; and the court so found the facts to be. But, however this may be, we do not see how the judgment can be sustained; and without a critical examination of the questions arising on the appeal from the order denying a new trial, we shall rest our decision upon the questions arising on the appeal from the judgment, disclosed by the judgment-roll alone.

It is quite clear to our minds, from the synopsis before given, that the findings and judgment cover a much wider field than the case made by the pleadings justifies. In finding the facts, and rendering judgment, the court must, to some extent at least, have overlooked the issues actually made by the pleadings, and had its attention mainly directed to the evidence introduced. A party must recover, if at all, according to the allegations in his pleadings, whatever the evidence introduced may be: Sterling v. Hanson, 1 Cal. 479; Boggs v. Merced Mining Co., 14 Cal. 279, 356; Smith v. Owens, 21 Cal. 23, 24; McComb v. Reed, 28 Cal. 284, 87 Am. Dec. 115; Barron v. Frink, 30 Cal. 486–489. The allegations in this case, upon which defendant recovered, relate strictly to partnership property, and look solely to an account of the partnership property. There is no allegation that anything was sold under the judgment, except partnership property. There is no allusion whatever to the fact that the individual property of Dickinson was sold, and no claim set up, to have any sale of his undivided real estate set aside, or individual real estate sold adjudged to be held in trust for Dickinson, and to be conveyed to him, or any account taken, and recovery had, of the rents and profits, or any recovery of the possession of such lands sold, and no allegations, under which such relief could be granted. No allusion of the remotest character was anywhere made to the Virginia street property, and none to the Clay street property, unless the latter is referred to under the terms ''building and lot.'' But, if referred to, it was averred to be partnership property, and the court has found, against the averment, that it was, and

still is, in equity the individual property of Dickinson alone. It was upon this theory that the title, which apparently passed by virtue of the sale under execution, so far as it was in plaintiff, was directed by the judgment to be conveyed to Dickinson, a recovery of the rents and profits had, and the possession restored. There is nothing, then, in the pleadings to justify the judgment for a conveyance, for the rents and profits, or for the possession of these two specific pieces of real property, or any other judgment, affecting them, on the theory that they were the individual property of Dickinson, constituting no part of the partnership assets. And this is the theory upon which this part of the judgment rests. The difficulty is not, as insisted by respondent, that the allegations of the counterclaim are defective only, and are cured by the verdict. It is not a question of insufficiency only of the pleading so far as it relates to the real estate in question. There is a total want of averments embracing the subject matter. The subject matter is not within the scope of the case presented by the pleadings: Barron v. Frink, 30 Cal. 489. The judgment—the relief granted—therefore, is not justified by the pleadings, and the error is presented by the judgment-roll.

The respondent claims that, if the judgment is erroneous in these respects, it can be modified, and the proper judgment rendered on the findings, without a new trial. There is nothing in the findings of the court which enables us to render the proper judgment, and it is not pretended that there is, unless we can also look to the report of the commissioner, upon the accounting had before him. This is not a part of the judgment-roll, and if it was, schedules "A" and "B"— the former showing a statement of the partnership account, and the latter the individual account between plaintiff and defendant—are not in the record, and it would be difficult, from the portion of the report shown, to determine how the rents and profits of the real estate of Dickinson, purchased under the execution, received by plaintiff, and appropriated to his own use, would affect the final result. It does not distinctly appear in the report upon what principle they were disposed of.

The commissioner also reports that "plaintiff, for and on account of said defendant, paid the sum of five hundred dol-

lars for the judgment known as the Lane judgment''; and it must be presumed that said amount was credited to the plaintiff in the individual and not the partnership account, as paid for defendant individually. The court, however, in the tenth and eleventh findings, finds that the judgment was paid for out of the partnership funds. If so, the other partner may claim the benefit of the purchase on behalf of the partnership; but we do not see upon what principle Dickinson can claim the benefit of the purchase with partnership funds for himself individually. If the funds of the firm have been used to purchase the judgment, the firm is clearly entitled to the benefit of the purchase, and the judgment belongs to the firm. On that theory Dickinson becomes the judgment debtor to the firm in the amount of the judgment. If, at the same time, the firm is indebted to him, in the accounting one indebtedness might very well be set off against the other, so far as they go, and we are inclined to think, upon the facts of the case, as they now appear, that this is the view that should have been taken in accounting. But the question has not been discussed, and we refrain now from passing definitely upon it. There would certainly be a large difference in the result, if a judgment for several thousand dollars, purchased for five hundred dollars with the partnership funds for the joint benefit of the firm, should be treated in the accounting as though it were purchased with the private funds of Dickinson for his individual benefit. We only refer to this matter now, to show the necessity for a reinvestigation of the facts, in order that it may be more distinctly ascertained what strictly pertained to the partnership, and what strictly to the respective parties individually, and that an accounting may be had in full view of this important distinction.

We cannot help thinking that no little confusion of ideas runs through the case, as now presented—resulting, perhaps, from an embarrassing uncertainty in the mind of defendant's attorney as to what the facts might turn out to be at the trial—and that exact justice cannot be done without a new trial.

We think, also, that the pleadings might be so amended as to more fully present the exact issues to be tried, and the merits of the case.

Judgment reversed, and new trial granted, with leave to the parties to amend their pleadings, as they may be advised.

We concur: Crockett, J.; Rhodes, J.; Sanderson, J.; Sprague, J.